IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOY LUCRETIA CLARK,                    :
    Plaintiff,                     :
                                   :
v.                                     :        CIVIL ACTION NO. 25-7122
                                   :
CAROLINE AZZARELLI, *et al.*,          :
    Defendants.                    :

## MEMORANDUM

**MARSTON, J.**                                    **April 17, 2026**

*Pro se* Plaintiff Joy Lucretia Clark initiated this civil action against The Advocacy

Alliance ("the Alliance") and one of its employees, Caroline Azzarelli, asserting violations of her

rights under the United States Constitution, the Americans with Disabilities Act (the "ADA"),

and Section 504 of the Rehabilitation Act (the "RA"). She also filed a motion to proceed *in*

*forma pauperis* (Doc. Nos. 7, 8), a motion for a temporary restraining order and preliminary

injunction (Doc. No. 9), and "Exhibits and Supporting Brief" (Doc. No. 10).[1] For the following

---

[1] Accompanying the recent motion seeking a temporary restraining order, Clark submitted a document entitled "Supplemental Complaint and Statement of Additional Facts," in which she seeks to provide "additional facts, documentation, and legal issues arising from Defendants' ongoing conduct." (Doc. No. 9 at 9). She later filed a 91-page document entitled, "Exhibits and Supporting Brief," consisting of a cover letter and a collection of various emails and pleadings she apparently submitted in state court cases. (*See* Doc. No. 10.) Clark cannot proceed in this fashion because the Federal Rules of Civil Procedure do not contemplate piecemeal pleadings or the amalgamation of pleadings, even in the context of a *pro se* litigant. *See Bryant v. Raddad*, No. 21cv1116, 2021 WL 2577061, at *2 (E.D. Pa. June 22, 2021) ("Allowing a plaintiff to file partial amendments or fragmented supplements to the operative pleading, 'presents an undue risk of piecemeal litigation that precludes orderly resolution of cognizable claims.'" (quoting *Uribe v. Taylor*, No. 10cv2615, 2011 WL 1670233, at *1 (E.D. Cal. May 2, 2011)); *Brooks-Ngwenya v. Bart Peterson's the Mind Tr.*, No. 16cv193, 2017 WL 65310, at *1 (N.D. Ind. Jan. 6, 2017) ("Piecemeal pleadings cause confusion and unnecessarily complicate interpretation of a movant's allegations and intent[] . . . .").

Moreover, although the Court may **consider** exhibits attached to a complaint in conducting statutory screening, a plaintiff **may not state a claim by relying solely on exhibits**. *See Harris v. U.S. Marshal Serv.*, No. 10cv328, 2011 WL 3607833, at *2 (W.D. Pa. Apr. 6, 2011), *report and recommendation adopted as modified*, 2011 WL 3625136 (W.D. Pa. Aug. 15, 2011) ("In addition to the

reasons, the Court will grant the motion to proceed *in forma pauperis*, dismiss the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and deny the motion for a temporary restraining order and preliminary injunction as moot.[2, 3]

## I.    FACTUAL ALLEGATIONS[4]

Clark's minor child, I.C., is a disabled student who requires special education.  (Compl. at 2.)  At some point, he became the beneficiary of a trust, the "Third-Party Educational Trust for

---

complaint, courts may consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case in disposing of a motion to dismiss under Rule 12(b)(6), and, hence, under the screening provisions of the PLRA.") (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994)); *see also Est. of Egenious Coles v. Zucker, Goldberg, & Ackerman*, 658 F. App'x 108, 111 (3d Cir. 2016) ("[W]e cannot fault the District Court for failing to intuit the necessary factual allegations from one of the many exhibits appended to the complaint."). Rather, a plaintiff must articulate in narrative form the facts giving rise to the claims that she intends to pursue.  *Prelle v. U.S. ex rel. Prelle*, No. 22cv1453, 2022 WL 16958896, at *1 (3d Cir. Nov. 16, 2022) ("A complaint must contain sufficient clarity to avoid requiring a district court or opposing party to forever sift through its pages in search of the nature of the plaintiff's claim." (internal quotations and citations omitted)).  If Clark seeks to amend her complaint, she must do so consistent with the Federal Rules of Civil Procedure and the Court's Order.

[2] Because the Court finds that Clark's Complaint fails to state a claim, it must then also deny as moot her motions for temporary injunctive relief.  "Without an operative complaint, this Court lacks jurisdiction to issue a temporary restraining order."  *Rehwald v. SCI Greene*, No. 24cv44, 2024 WL 6111690, at *6 (W.D. Pa. June 3, 2024), *report and recommendation adopted*, 2024 WL 6111637 (W.D. Pa. July 25, 2024); *see also Tunsil v. Taylor*, No. 25cv879, 2025 WL 1872490, at *4 (M.D. Pa. July 7, 2025) ("The court will also deny [p]laintiff's motion for [a TRO and PI] since there is no operative complaint in the matter.").

[3] Clark submitted a document to the Court entitled, "Certificate of Supplemental Service," in which she purports to have served Doc. Nos. 9 and 10 upon the Defendants "in accordance with" the Federal Rules of Civil Procedure.  (*See* Doc. No. 11.)  In Doc. No. 9, Clark claims to have "initiated service in accordance with Federal Rule of Civil Procedure 4(d)" by mailing a copy of the Complaint and waiver request to Defendants.  (*See* Doc. No. 9 at 3 ¶ E.)  However, no proper service of this civil action has occurred yet.  Clark has not paid the filing fees for this action and has requested leave to proceed *in forma pauperis*.  Pursuant to 28 U.S.C. § 1915(e)(2)(B), upon the granting of her motion to proceed *in forma pauperis* as the Court does herein, Clark's complaint must be screened prior to service and issuance of any summonses, and it must be dismissed if it is frivolous or malicious, fails to state a claim, or seeks monetary relief from an immune defendant.  *See id.* at § 1915(e)(2)(B)(i)–(iii); *In re Webb*, No. 22cv1708, 2022 WL 2168864, at 1 n.1 (3d Cir. Jun. 16, 2022) ("Because Webb was granted IFP status, his complaints are subject to the screening provision in 28 U.S.C. § 1915(e)(2)(B).").  Because the Court concludes that Clark's Complaint must be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and for lack of subject matter jurisdiction, no summonses shall issue at this time.

[4] The factual allegations set forth in this Memorandum are taken from Clark's Complaint (Doc. No. 2 ("Compl.")).  The Court adopts the pagination assigned by the CM/ECF docketing system.

[I.C.]," created with proceeds from a settlement with a public school district. (*Id.*) According to Clark, the trust supports I.C.'s transportation, medical, educational, and related needs. (*Id.* at 3.) The Alliance administers the trust and exercises decision-making authority over distribution of benefits. (*Id.* at 2.) Azzarelli is the trust's administrator. (*Id.*)

Clark alleges that, after the original creation of the trust, "the Defendants purported to operate under a revised trust instrument." (*Id.*) The revised trust was never submitted to the Philadelphia Orphans' Court for approval, nor was it approved by I.C. or Clark, who purports to act on I.C.'s behalf.[5] (*Id.*) Clark contends that the Alliance does not have legal authority to administer the trust, yet they have "repeatedly denied transportation, reimbursements, and other supports necessary for educational and medical access." (*Id.* at 3.)

Defendants filed or permitted the filing of an IRS Form SS-4 to obtain an Employer Educational Number (EIN) for the trust using Clark's social security number, without her consent. (*Id.*) As a result, Clark was allegedly exposed to tax liability, identity theft risk, and "ongoing privacy harm." (*Id.*)

Clark has "repeatedly notified" Defendants of the misuse of Clark's social security number, "defective accounting, unexplained fee-taking, lack of legal authority, and arbitrary denials of beneficiary expenses, and of the resulting harm." (*Id.* at 4.) Defendants have allegedly failed to rectify violations or provide documentation of their authority to act. (*Id.*) Clark also states that she is disabled, that Defendants' actions have worsened her own medical

---

[5] Clark refers to herself as "attorney in fact" for I.C. (Compl. at 2.) However, Clark does not identify herself as a licensed attorney, nor does she plead any facts suggesting it. As explained below, a *pro se* party cannot represent a third party in a civil action in federal court, even if that third party is her child.

and emotional conditions, and interfered with her ability to care for I.C. (*Id.* at 3.) And Clark alleges that after she "asserted legal and disability-related rights," the Defendants retaliated. (*Id.*)

Clark filed this action in December 2025, raising claims under 42 U.S.C. §§ 1983 and 1985 for violations of and conspiracy to violate her civil rights, and violations of the ADA and the RA. (*Id.* at 4–5.) She also alleges Defendants negligently mishandled her private information, which the Court interprets as a common law invasion of privacy claim under state law. (*Id.* at 5.) She seeks injunctive and declaratory relief, as well as money damages. (*Id.* at 5–6.) And on April 8, 2026, Clark requested emergency injunctive relief due to "ongoing and escalating harm" as it relates to the same trust and allegations discussed above. (Doc. No. 9.)

## II.    STANDARD OF REVIEW

The Court will grant Clark leave to proceed *in forma pauperis* because it appears that she is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss her complaint if, among other things, it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At this point, the Court accepts all plausible facts alleged in Clark's Complaint as true, draws all reasonable inferences in her favor, and asks only whether the Complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v.*

4

*Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

As Clark is proceeding *pro se*, the Court construes her allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  And the Court will "apply the relevant legal principle even when the complaint has failed to name it."  *Id.* (quoting *Mala*, 704 F.3d at 244).  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim."  *Id.* (quoting *Mala*, 704 F.3d at 245).

In addition, the Court must dismiss the action "[i]f the court determines at any time that it lacks subject-matter jurisdiction."  Fed. R. Civ. P. 12(h)(3); *Grp. Against Smog & Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues sua sponte").  A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction.  *See Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))).

## III.    DISCUSSION

The Complaint contains few concrete facts and mainly consists of Clark's vague and repetitive statements that the trust has acted inappropriately.  With that in mind, it appears that most of her claims are brought on behalf of I.C.  The Court considers these claims before analyzing the extent to which Clark has stated any cognizable claim on her own behalf.

### A.    Claims Brought on Behalf of I.C.

Clark states that she is, in part, attempting to bring claims on behalf of her minor child, I.C.  (Compl. at 1–2.)  Under 28 U.S.C. § 1654, parties "may plead and conduct their own cases personally or by counsel" in the federal courts.  Section 1654 thus ensures that a person may conduct his or her own case *pro se* or retain counsel to do so.  *See Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882 (3d Cir. 1991) ("The statutory right to proceed *pro se* reflects a respect for the choice of an individual citizen to plead his or her own cause." (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990))).  Although an individual may represent himself *pro se*, a non-attorney may not represent other parties in federal court.  *See Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 232 (3d Cir. 1998) ("The rule that a non-lawyer may not represent another person in court is a venerable common law rule."), *abrogated on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007).  "[A] plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim.  *See Township of Lyndhurst v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) (quotations omitted)).  Because the same proposition applies to parents and their minor children, Clark lacks standing to bring claims on behalf of I.C.  *See Chang v. Dep't of Servs. for Child., Youth, & Their Fams.*, 790 F. App'x 435, 437–38 (3d Cir. 2019) (holding that a father lacked standing to address children's claims on appeal); *Jackson v. Bolandi*, No. 18cv17484, 2020 WL 255974, at *5 (D.N.J. Jan. 17, 2020) ("Here, *pro se* Plaintiff does not have standing to assert any claims on behalf of her daughter.").  The barred claims include all claims in the Complaint concerning I.C.'s status and rights as a beneficiary of the trust, such as the allegations that benefits were wrongly withheld or denied, and claims of harm due to the alleged lack of authority or mismanagement of the trust with respect to I.C.'s interests.

For these reasons, all claims that Clark brings on behalf of I.C. must be dismissed without prejudice for lack of standing.

### B.    Civil Rights and Constitutional Claims

To the extent that Clark asserts claims in this civil action that could possibly be deemed to be her own, such as her contentions that Defendants violated her civil and constitutional rights, that they misused her social security number, and that the Defendants' actions caused her economic loss and aggravation of her existing medical conditions, she has not stated any plausible claims.  The Court discusses Clark's claims for constitutional violations under § 1983, for conspiracy under § 1985, for disability discrimination under the ADA and the RA, and for violations of state law in turn.

### 1.    Section 1983 Claims

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[6]  *West v. Atkins*, 487 U.S. 42, 48 (1988).  "The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law."  *Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995).

---

[6] Whether a defendant is acting under color of state law—i.e., whether the defendant is a state actor—depends on whether there is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself."  *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted).  "To answer that question, [the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists:  (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity."  *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted).

Clark does not provide any factual allegations with respect to the Defendants that would support an inference that they were acting under color of state law. *See Massey v. Crady*, No. 17cv241, 2018 WL 4328002, at \*6 (W.D. Pa. Aug. 8, 2018) ("Private citizens . . . are not state actors, and therefore . . . any § 1983 claims against [them] should be dismissed."). She asserts that the Defendants are state actors because they administer a trust that was originally funded with proceeds from a settlement with a public school district. (Compl. at 3.) But a third party's administration of funds from a special educational settlement does not make them state actors. *See Kraemer ex rel. Kraemer v. Pennsylvania*, No. 10cv4868, 2011 WL 4336671, at \*5 (E.D. Pa. Sept. 15, 2011) (concluding that administrators of trust created from proceeds of special education settlement were not state actors under § 1983).

In addition, Clark's references to "due process," "equal protection," and "liberty and property interests" are not sufficient on their own to allege proper constitutional claims. (Compl. at 5.) To the extent she could point to claims independent of I.C., the Complaint is devoid of plausible facts in support of her legal theories to state a claim sufficient to withstand dismissal. *Iqbal*, 556 U.S. at 678. For these reasons, Clark's claims for "Civil Rights Violations" (Compl. at 4) and "Constitutional Violations" (*id*. at 5), will be dismissed for failure to state a claim. 28 U.S.C. § 11915(e)(2)(B)(ii).

### 2.    Section 1985 Claim

Next, Clark attempts to bring a claim for civil rights conspiracy pursuant to 42 U.S.C. § 1985. To state a plausible claim under § 1985 a plaintiff must allege the following elements: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the

deprivation of any right or privilege of a citizen of the United States.  *See Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997).  Significantly, "'[t]he [statutory] language requiring intent to deprive of equal protection . . . means that there must be some racial . . . invidiously discriminatory animus behind the conspirators' action.'"  *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 835 (1983) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)); *see also Farber v. City of Paterson*, 440 F.3d 131, 136 (3d Cir. 2006) (explaining that "§ 1985(3) defendants must have allegedly conspired against a group that has an identifiable existence independent of the fact that its members are victims of the defendants' tortious conduct"); *Hauptmann v. Wilentz*, 570 F. Supp. 351, 386 (D.N.J. 1983) ("If the conspiracy only affects the plaintiff individually, the allegations will not satisfy the class-based animus requirement."), *aff'd sub nom., Appeal of Hauptmann*, 770 F.2d 1070 (3d Cir. 1985). Moreover, a plaintiff must allege specific facts in order to sustain a § 1985(3) claim. *Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir. 1972) (requiring "a clear showing of invidious, purposeful and intentional discrimination between classes or individuals" to state a conspiracy claim under § 1985(3)) ; *see also Grigsby v. Kane*, 250 F. Supp. 2d 453, 458 (M.D. Pa. 2003) ("[O]nly allegations which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and actions taken in furtherance of the conspiracy, will be deemed sufficient.").

Clark's § 1985 conspiracy claim fails to meet any of these criteria.  Her claim consists of one sentence: "Defendants conspired to obstruct Plaintiff's access to legal protections and federally guaranteed educational benefits."  (Compl. at 5.)  As a threshold matter, the claim appears to pertain strictly to I.C.'s interests, i.e., "access to legal protections and . . . benefits," related to the trust.  But even if Clark has some detectible interest here, there are no facts within

9

the Complaint plausibly alleging the existence of a conspiracy or invidious, purposeful discrimination based on any racial or class animus. *See Farber*, 440 F.3d at 136. Clark never identifies her race or claims to fall within a particular class, nor does she make any allegation that race or class was the motivation behind the Defendants' alleged actions. Further, Clark fails to allege *any* facts to support the existence of a conspiracy; Clark's bare conclusory statement is simply not enough to allege a conspiracy under § 1985(3). *See Kraemer*, 2011 WL 4336671, at *6 (concluding that plaintiff's repeated allegation that Defendants acted "in concert" did not suffice where he did not allege facts to support existence of such an agreement) (citing *Gordon v. Lowell,* 95 F. Supp. 2d 264, 270 (E.D. Pa. 2000) ("An allegation of conspiracy is insufficient to sustain a cause of action under 42 U.S.C. § 1985; it is not enough to use the term 'conspiracy' without setting forth supporting facts that tend to show an unlawful agreement.")). Clark's § 1985 claim is therefore not plausible and will be dismissed.

> ### C.    Claims Under the ADA and RA

Last, Clark asserts disability discrimination and retaliation claims against the Defendants under Title II of the ADA, which requires public entities to provide, in all of their programs, services, and activities, reasonable accommodations to qualified individuals with disabilities. (*See* Compl. at 4); 42 U.S.C. § 12132; *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 287 (3d Cir. 2019). She also brings claims under against the Alliance under § 504 of the RA, which similarly requires public entities not to discriminate against those with disabilities. (*See* Compl. at 4.); 29 U.S.C. § 794. When a plaintiff sues under both the ADA and the RA, the court will "often address both claims in the same breath, construing the provisions of both statutes in light of their close similarity of language and purpose," since "the scope of protection afforded under both

10

statutes, *i.e.*, the general prohibition against discrimination, is materially the same." *Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 117 (3d Cir. 2018) (cleaned up).

To state a plausible claim under either the ADA or the RA, a plaintiff "must allege that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." *Furgess*, 933 F.3d at 288–89. The plaintiff "must also [allege] intentional discrimination under a deliberate indifference standard [if] he seeks compensatory damages." *Id.* at 289 (footnote omitted). A plaintiff may meet that standard in two ways: "first, by alleging facts suggesting that the existing policies caused a failure to adequately respond to a pattern of past occurrences of injuries like the plaintiffs, or, second, by alleging facts indicating that [she] could prove that the risk of cognizable harm was so great and so obvious that the risk and the failure to respond will alone support finding deliberate indifference." *Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018) (internal quotations and alterations omitted).

In addition to these common elements, each statute has an additional requirement. To succeed on a claim brought under Title II of the ADA, the plaintiff must allege that the defendant is a public entity. 42 U.S.C. § 12131(1). And a party who seeks to proceed under § 504 of the RA must "show that the allegedly discriminating entity receives federal funding." *McDonald-Witherspoon v. City of Philadelphia*, 481 F. Supp. 3d 424, 439 (E.D. Pa. 2020) (citing *CG v. Pa. Dep't of Educ.*, 734 F.3d 229, 235 n.10 (3d Cir. 2013)); *see also* 29 U.S.C. § 794(a).

Once again, Clark has framed her claims as primarily relating to purported discrimination related to I.C.'s benefits. (*See* Compl. at 4 ¶ 26 ("Defendants denied meaningful access to services"), ¶ 28 ("Defendants denied benefits").) To the extent Clark asserts them as her own, the Court finds that her claims are not plausible.

11

### 1.      The ADA Applies Only to Public Entities

First, Clark's ADA claims against Azzarelli and the Alliance must be dismissed because Clark has not alleged that either is a public entity.  As noted above, Title II only applies to a public entity.  The statute defines a "public entity" as: "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) any department, agency, special purpose district, or other instrumentality of a State or States or local government."  42 U.S.C. § 12131(1).  The ADA does not govern the conduct of individuals sued in their personal capacities or private entities.  *See Montanez v. Price*, 154 F.4th 127, 145 (3d Cir. 2025) (stating that individuals are not subject to suit in their personal capacities under Title II of the ADA and that state employees and contractors are not "public entities" subject to suit under the ADA).

Thus, Clark's ADA claim against Azzarelli in her individual capacity will be dismissed with prejudice.  *See Marasek v. 206 Courthouse Lane*, No. 17cv12299, 2020 WL 70926, at *3 (D.N.J. Jan. 7, 2020) (stating Title II does not govern the conduct of private entities) (citing *Graham v. Rawley*, No. 14cv6743, 2015 WL 3660770, at *4 (D.N.J. June 11, 2015))*.*  As will Clark's ADA claim against the Alliance.  Clark states that the Alliance "is a Pennsylvania-based entity that administers disability-related trusts, receives state and federal funding, and exercised decision-making authority over access to . . . benefits for a disabled student . . . ."  (Compl. at 2.)  Yet, her bald allegation that the Alliance "receives state and federal funding" does not suffice to plausibly allege that it is an "instrumentality of a State or States or local government."  42 U.S.C. § 12131(1)(B); *Montanez*, 154 F.4th at 145 ("Even though Wellpath contracts with the Commonwealth to perform a traditional government function—providing medical services to state prisoners—that alone is not enough to transform a private corporation into an

12

"instrumentality of a State.") (citing cases); *El v. People's Emergency Ctr.*, 315 F. Supp. 3d 837, 843–44 (E.D. Pa. 2018) (dismissing Title II ADA claim for plaintiff' s failure to allege discrimination by a public entity); *Zemater v. Pub. Action to Deliver Shelter Inc.*, No. 22cv6712, 2024 WL 3694524, at *2 (N.D. Ill. Aug. 7, 2024) ("[T]here are no allegations that Hesed House is an instrumentality of a state or local government that would qualify as a public entity for purposes of Title II of the ADA, the IHRA, and the Rehabilitation Act.").

### 2. Clark is not a "Qualified Individual With a Disability" under the ADA and RA

Second, with respect to both the ADA and the RA claims, Clark has not plausibly alleged that she is a "qualified individual with a disability." *See Furgess*, 933 F.3d at 288–89; *Giterman v. Pocono Med. Ctr.*, 361 F. Supp. 3d 392, 409 (M.D. Pa. 2019). To do so, she must provide facts to show that she has a "disability" which is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* at § 12101(2)(A). The 2008 ADA Amendments Act clarified that the definition of disability and "substantially limits" should be construed "in favor of broad coverage of individuals . . . to the maximum extent permitted." 42 U.S.C. § 12102(4)(A)–(B). However, "to sufficiently allege that an impairment interferes with a major life activity, a plaintiff must elaborate on whether the alleged impairment interfered with [her] alleged major life activity during the period of alleged discrimination by Defendants," and "the plaintiff's allegations must contain sufficient factual support for his or her purported limitations, such as describing in some detail the frequency, duration, or severity of his or her limitations." *Earl v. Good Samaritan Hosp. of Suffern NY*, 625

13

F. Supp. 3d 292, 304 (S.D.N.Y. 2022) (cleaned up), *aff'd*, No. 22-2505, 2023 WL 8708417 (2d Cir. Dec. 18, 2023).

Clark has not plausibly asserted that her own conditions interfere with any major life activities. Rather, she vaguely contends that she and I.C. "are individuals with disabilities as defined by federal law." (Compl. at 3.) She also mentions that she has some unspecified "medical conditions." (*Id*.) Clark fails to provide any facts that describe her limitations in terms of their "frequency, duration, or severity." *Earl*, 625 F. Supp. 3d at 204. This entirely conclusory reference to a disability is not sufficient to state a plausible claim under the ADA or § 504 of the RA. *See, e.g., Evans v. President of Thomas Jefferson Univ. Hosp.*, No. 22cv1371, 2022 WL 2916685, at *5 & n.8 (E.D. Pa. July 25, 2022) (dismissing complaint where plaintiff did "not allege whether or how his alleged disability impacts his daily living, and his conclusory allegations that he was subject to discrimination because of his disability are not sufficient to state a plausible claim," and noting that "qualified individual with a disability" is used interchangeably for ADA and RA claims); *Karipidis v. ACE Gaming LLC*, No. 09cv3321, 2010 WL 2521209, at *8 (D.N.J. June 9, 2010) ("By simply stating that the plaintiff lives with an injury, illness or impairment without alleging that the impairment substantially limits a major life activity creates a defect in the Complaint [alleging ADA claim].").

### 3. Clark Fails to Allege Discrimination on the Basis of Disability

Third, even if Clark had plausibly alleged that she is a "qualified individual with a disability," her ADA and RA claims are additionally deficient because she has not provided any facts that support her sweeping statements that she was subjected to discrimination "on the basis of disability," (the ADA claim) and "solely by reason of disability," (the RA claim). (Compl. at 4); *see Karipidis*, 2010 WL 2521209, at *8 (noting the plaintiff's obligation to provide facts that

14

"independently 'permit the court to infer more than the mere possibility of misconduct.'" (citation omitted)).  While she contends that the Alliance's actions were wrong because it acted without authority (*id.* at 2–3), and because the reimbursement requests were allegedly within the scope of the trust (*id*. at 3), she alleges no factual basis for the Court to infer that the Alliance denied her goods, services, facilities, privileges, advantages or accommodations *due to discrimination based on her disability*.[7]  *See, e.g., Karipidis*, 2010 WL 2521209, at *9 (dismissing ADA claim where plaintiff failed to plead facts showing that he suffered adverse action "as a result of discrimination"); *Evans*, 2022 WL 2916685, at *5 (noting that plaintiff's RA claim did not state a claim where he presented conclusory allegations he was subject to discrimination because of his disability).

*     *     *

Because Clark has failed to allege facts to support multiple elements of her ADA and RA claims, those claims will be dismissed for failure to state a claim.  28 U.S.C. § 1915(e)(2)(B)(ii).

### D.    State Law Claim

The Complaint may be fairly read to raise a possible state law claim for invasion of privacy related to the alleged misuse of her social security number.  (Compl. at 5.)  Because the Court has dismissed Clark's federal claims, however, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any remaining state law claims.  Accordingly, the only independent basis for jurisdiction over such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

---

[7] Aside from the bald allegation that the Defendants retaliated against her for asserting her rights, (Compl. at 3), Clark never provides any facts illustrating how and when she asserted her rights, and what, exactly, Defendants did to retaliate against her in response.

15

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required.  This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Benefit Life Co.*, 800 F. 3d at 104 (quoting *Lincoln Prop. Co.*, 546 U.S. at 89, and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).  An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain.  *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).

Clark alleges that she is a resident of Pennsylvania.  (Compl. at 2.)  As for the Defendants, she does not mention the citizenship of Azzarelli but asserts that the Alliance "is a Pennsylvania-based entity."  (*Id.*)  Based upon Clark's own allegations, it appears that the Alliance may be a Pennsylvania citizen, as is Clark.  Accordingly, Clark has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claim she intends to pursue.  Therefore, the Court will dismiss these claims as well.

## IV.    CONCLUSION

The Court will grant Clark leave to proceed *in forma pauperis* and dismiss her claims for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and for lack of jurisdiction.  All claims raised on behalf of I.C. will be dismissed without prejudice and without leave to amend for lack of standing.  The ADA claim alleged against Azzarelli will be dismissed with prejudice.  Clark will be permitted to amend the remaining § 1983, § 1985, ADA, and RA claims if she can, **in good faith**, allege additional facts about how **her** civil rights were violated by a state actor and about how her rights as an alleged disabled person were violated. Clark will also be permitted to amend her state law claim if she can **in good faith** allege facts supporting this Court's subject

16

matter jurisdiction.  The motion for a temporary restraining order and preliminary injunction will

be denied as moot.

An appropriate order follows, which also provides additional information on

amendment.[8]

---

[8] At this time, the Court must also note that Clark has filed **eleven** civil actions in this Court since October 2024 and has moved to proceed *in forma pauperis* in all of them.  Between October 2024 and February 2025, Clark filed seven civil actions.  Clark **never** stated a plausible legal basis for any of those civil actions; rather, all were dismissed as frivolous, for failing to state a claim upon which relief may be granted, or due to this Court lacking subject matter jurisdiction.  *See Clark v. Navy Fed. Credit Union*, No. 24-5446 (E.D. Pa.), Doc. No. 15 (May 27, 2025 Order dismissing case with prejudice for failure to state Fair Credit Reporting Act, Truth in Lending Act, or state law claims); *Clark v. Experian*, No. 25-792 (E.D. Pa.), Doc. No. 7 (July 8, 2025 Order dismissing and closing case for failure to state claims under the Fair Credit Reporting Act and state law); *Clark v. Orphans Court Phila.*, No. 25-838 (E.D. Pa.), Doc. No. 8 (April 25, 2025 Order dismissing case with prejudice on immunity grounds); *Clark v. TD Bank*, No. 25-881 (E.D. Pa.), Doc. No. 8 (May 27, 2025 Order dismissing case with prejudice for failure to state claims under the Gramm Leach Bliley Act, the Massachusetts Data Breach Notification Law, and the New York Shield Law); *Clark v. Dep't of Educ.*, No. 25-883 (E.D. Pa.), Doc. No. 7 (July 21, 2025 Order dismissing claims alleging violations of the Higher Education Act, Federal Trade Commission Act, the Civil Rights Act , and state consumer laws); *Clark v. PNC Bank*, No. 25-885 (E.D. Pa.), Doc. No. 7 (June 17, 2025 Order dismissing complaint alleging violations of the Fair Housing Act, Consumer Financial Protection Act, the Equal Credit Opportunity Act with prejudice as frivolous and failing to state a plausible claim); *Clark v. SoFi*, No. 25-909 (E.D. Pa.), Doc. No. 6 (June 4, 2025 Order dismissing case with prejudice for failure to state claims under the National Currency Act of 1863, the Federal Deposit Insurance Act, the Truth in Lending Act, or the Equal Credit Opportunity Act).

Given the volume of cases she filed between October 2024 and February 2025 and that Clark never alleged a viable legal basis for the wide variety of claims she sought to bring, the Court strongly cautioned her in its June 17, 2025 Memorandum in *Clark v. PNC Bank* that:

> [T]he continued abuse of the judicial process and of *in forma pauperis* status may result in the denial of an application to proceed *in forma pauperis* in the future. *See Douris v. Middletown Township*, 293 F. App'x 130, 132 (3d Cir. 2008) (affirming district court's denial of *in forma pauperis* motion where litigant 'repeatedly and unsuccessfully filed lawsuits' claiming civil rights violations, which 'required the expenditure of significant judicial resources').

*See Clark v. PNC Bank*, No. 25cv885, 2025 WL 1698702, at *1 n.2 (E.D. Pa. June 17, 2025).

Clark filed this matter on December 15, 2025, and proceeded to file three more civil actions within the first week of January 2026.  *See Clark v. Davita, Inc.*, No. 26-23 (E.D. Pa.); *Clark v. Phila. Dep't of Hum. Servs.*, No. 26-102 (E.D. Pa.); *Clark v. Phila. Parking Auth.*, No. 26-104 (E.D. Pa.).  The latter two matters have been dismissed for failure to prosecute and failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), respectively.  Due to Clark's demonstrated history of filing multiple meritless cases at the same time of varying subject matter, claims, and defendants, and her return a mere five months after her last case closed (and after she was warned of possible consequences of abusing the judicial process), this Memorandum is a **STERN WARNING** to Clark that the Court will take actions to

17

restrict Clark's meritless filings should she continue to abuse the judicial process and the *in forma pauperis* privilege in the future.  *See Butler v. Dep't of Justice*, 492 F.3d 440, 445 (D.C. Cir. 2007) (explaining that a litigant's right of access to courts "must be counterbalanced by the traditional right of courts to manage their dockets and limit abusive filings." (citations and internal quotation marks omitted)).  This includes this Court's review of any amended complaints in this and *Clark v. Phila. Parking Auth.*, No. 26-104, along with statutory screening in *Clark v. Davita, Inc.*, No. 26-23.